STATE OF CONNECTICUT *v.* RAYMOND APONTE
(SC 16546)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued November 29, 2001—officially released February 26, 2002

*Donald D. Dakers,* special public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *John F. Blawie*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The principal issue in this certified appeal is whether the trial court's instructions to the jury improperly imposed on the jury a mandatory presumption, thereby shifting the burden of proof from the state to the defendant and depriving the defendant of a constitutionally fair trial. Although the trial court's instructions contained language that we have used in the past, the defendant claims that this language was improper in light of the United States Supreme Court's decision in *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979).

The defendant, Raymond Aponte, was convicted, following a jury trial, of the crimes of murder in violation of General Statutes § 53a-54a (a)[1] and conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a).[2] The defendant was sentenced to a total effective term of forty-five years imprisonment. On appeal to the Appellate Court, the defendant claimed that the trial court, *Stodolink, J.*, improperly: (1) failed to charge the jury that the crime of conspiracy to commit murder requires a specific intent to cause the death of the victim; (2) instructed the jury that one who uses a deadly weapon on the vital part of another

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

person will be deemed to have intended the probable result of that act in violation of the principle enunciated in *Sandstrom*; and (3) charged the jury that the defendant could be found guilty of murder as a principal when there was insufficient evidence to support such a conviction. *State* v. *Aponte*, 63 Conn. App. 82, 83, 774 A.2d 1035 (2001). The Appellate Court affirmed the judgment of the trial court. Id., 92. The defendant then petitioned this court for certification to appeal, which we granted, limited to the following two issues: (1) "Did the Appellate Court properly conclude that the trial court's jury instruction regarding the specific intent necessary for a charge of conspiracy to commit murder was constitutionally sufficient?" and (2) "Did the Appellate Court properly conclude that the trial court's instruction regarding the use of a deadly weapon on the vital part of another was constitutionally sufficient?" *State* v. *Aponte*, 256 Conn. 935, 776 A.2d 1150 (2001). We affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts, which are aptly set forth in the Appellate Court decision. "On January 3, 1996, at approximately 12:55 p.m., the victim, Aldrich Mitchell, and two eyewitnesses, Luz Rosado and Juan Vasquez, were standing in front of Rosado's apartment in the Green Homes apartment complex on Harral Avenue in Bridgeport. As the three of them stood talking, three males approached. Two of them were wearing ski masks, sunglasses and hoods that covered their faces. Vasquez later identified the three men as Luis Delvalle, Jose Garcia and the defendant. All three men were armed.

"The victim attempted to enter Rosado's apartment and was told by one of the men not to enter the apartment but to come with them. The victim followed the three men away from Rosado's apartment and toward the driveway of the Green Homes apartment complex. Rosado went into her apartment and watched through

her window as the victim left with the three men. The victim turned and ran away from the three men. All three men then turned and fired their weapons at the victim. Rosado heard seven or eight gunshots.[3] The three men then fled, and Vasquez ran to the victim. Vasquez observed a bullet wound to the victim's head.[4] Vasquez waited with the victim for the ambulance to come and then left the scene after the victim was taken to a hospital." *State* v. *Aponte*, supra, 63 Conn. App. 83–84.

## I

The defendant first claims that the trial court improperly instructed the jury regarding the specific intent necessary to find him guilty of conspiracy to commit murder. He argues that the trial court failed to instruct the jury that the intent required was the specific intent to commit murder. The defendant claims specifically that, in order for the instruction to be sufficient, the trial court was required to instruct the jury that, at the time he entered into the conspiracy, he specifically had intended the death of the victim. The Appellate Court determined that the trial court sufficiently had instructed the jury as to the specific intent to murder. We agree with the Appellate Court.

The defendant did not object to the instruction at trial and now seeks to prevail pursuant to *State* v. *Gold-*

---

[3] Detective Leonard Sattani of the Bridgeport police department investigated the shooting. He discovered eleven spent cartridge casings and one spent bullet at the scene. Edward McPhillips, a firearms examiner for the state of Connecticut, examined the bullet and cartridge casings. He testified that five of the cartridges came from one gun and that the remaining six could have come from one gun or several different guns.

[4] Malka B. Shah, an associate medical examiner for the state of Connecticut, performed an autopsy on the victim. She testified that a single bullet entered the victim's body at the lower part of his shoulder, initially exited at the top of his shoulder, reentered at the back of his head, and came to rest at the left side of his jaw. The bullet damaged the victim's spinal cord and brain, thereby causing his death. Shah certified that the cause of the victim's death was a gunshot wound to the head and neck.

*ing*, 213 Conn. 233, 238–42, 567 A.2d 823 (1989). Under *Golding*, a defendant may prevail on a claim not preserved at trial only if the following four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40.

The record is adequate to review the defendant's alleged claim of error and the claim—that his due process rights were violated—is of constitutional magnitude. Accordingly, he has satisfied the first two prongs of *Golding* and his claim is reviewable. The defendant's claim fails, however, under the third prong of *Golding* review in that there was no clear violation of his constitutional rights and the trial court's instruction did not deprive him of a fair trial.

"Our analysis begins with a well established standard of review. When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995).

"[A]n accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hinton,* 227 Conn. 301, 308, 630 A.2d 593 (1993). "It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . [T]he failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Citations omitted; internal quotation marks omitted.) *State* v. *Denby,* supra, 235 Conn. 483–84.

Our examination of the trial court's instruction regarding the charge of conspiracy to commit murder reveals that each element of the crime was set forth sufficiently, and that it is not reasonably likely that the jury was misled. The charge outlined the elements of the crime of conspiracy, emphasizing that the jury must find that the defendant had the "specific intent to violate the law when he entered into the agreement to engage in conduct constituting a crime," and that the crime in question was murder. Specifically, the trial court defined murder as requiring the intent "to cause the death of another person and that in accordance with that intent the defendant caused the death of that person." The trial court instructed the jury as to the elements necessary to prove that the defendant had acted as the principal or as an accessory to the murder. The trial court also instructed the jury that the state of mind required in order to find the defendant guilty of conspiracy to commit murder was that of the intent to cause the death of the victim. In supplemental instructions requested by the jury after two days of deliberations, the court reasserted the separate elements comprising the charge of conspiracy to commit murder.

After the defense objected to the trial court's charge regarding the element of specific intent required to establish the crime of conspiracy to commit murder, the trial court reinstructed the jury that "the question is whether there was a conspiracy to commit murder as I've defined that for you." Thus, by the court's reference both to murder and its elements, including the intent to kill, the court adequately defined the mens rea for conspiracy to commit murder. We conclude that the charge as a whole was sufficient to instruct the jury as to its role, namely, to determine whether the state had proven each of the specific elements of the crime of conspiracy to commit murder.

## II

The defendant next claims that the trial court's instruction regarding the use of a deadly weapon on the vital part of another person was constitutionally deficient because it established a mandatory presumption and improperly shifted the burden of proof to the defendant. Again, this claim is raised pursuant to *Golding* and we find that it fails to meet the *Golding* standard. Although the record is adequate for review and the claim of the violation of due process rights is constitutional, we disagree with the defendant that the constitutional violation clearly exists and clearly deprived him of a fair trial.

The trial court gave the following jury instruction regarding the crime of murder and, specifically, the element of intent: "An intent to cause death may be inferred from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to it [and] immediately following the death. One who uses a deadly weapon on the vital part of another will be deemed to have intended the probable result of that

act [and] from such a circumstance a proper inference may be drawn that there was an intent to kill."

The defendant argues that this instruction impermissibly shifted to him the burden of proof regarding intent because the charge created a mandatory presumption that he had the intent to kill solely by virtue of his use of a deadly weapon. We have used this language in the past when upholding convictions in the face of sufficiency of the evidence claims. Specifically, we have upheld convictions when the instruction has been used to explain why a jury reasonably could have inferred, on the basis of the evidence, that the defendant had intended to kill the victim by the use of a deadly weapon. See *State* v. *Tomasko*, 238 Conn. 253, 259, 681 A.2d 922 (1996) ("[o]ne who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill" [internal quotation marks omitted]); *State* v. *Stanley*, 223 Conn. 674, 680, 613 A.2d 788 (1992) (same). The defendant argues, however, that this language is constitutionally deficient in light of the United States Supreme Court's decision in *Sandstrom*.

"In *Sandstrom* v. *Montana*, supra, [442 U.S.] 517–24, the United States Supreme Court held that a jury instruction that the law presumes that a person intends the ordinary consequences of his voluntary acts violated the defendant's due process rights because a reasonable jury could have interpreted the instruction as a conclusive or burden-shifting presumption and thus relieved the state of its burden of proving every element of the crime. . . . We have, however, recognized that the rule of *Sandstrom* must not be oversimplified. . . . *Sandstrom* does not invalidate, for example, the use of an entirely permissive inference or presumption, which

allows . . . the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant. . . . A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." (Citations omitted; internal quotation marks omitted.) *State* v. *Diaz*, 237 Conn. 518, 545–46, 679 A.2d 902 (1996).

In the present case, the trial court's instruction was qualified, both immediately preceding and following the challenged language, by its use of the permissive "may." The instruction stated: "An intent to cause death *may* be inferred from circumstantial evidence . . . . One who uses a deadly weapon on the vital part of another will be deemed to have intended the probable result of that act [and] from such a circumstance a proper inference *may* be drawn that there was an intent to kill." (Emphasis added.) We have determined previously that the inclusion of such permissive language tempers the challenged portion of the instruction and ensures that a reasonable jury will not interpret the charge in an unconstitutional manner. See *State* v. *Pina*, 186 Conn. 261, 263, 440 A.2d 967 (1982) ("[i]t is the lack of qualifying instructions as to the legal effect of the presumption, [that] mak[es] it possible for a reasonable jury to interpret the use of the word presume in an unconstitutional manner" [internal quotation marks omitted]); *State* v. *Stankowski*, 184 Conn. 121, 151–53, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981) ("The sentence before the portion objected to was [a] person's intentions *may* be inferred from his conduct. . . . [W]e conclude that the attacked portions of this charge, when considered in light of the charge as a whole, including the explanatory instructions on inference and circumstantial evidence, could not be reasonably construed to require a conclusive presump-

tion or a shifting of the burden of proof, and did not deprive the defendant of his due process right to a fair trial." [Citations omitted; emphasis in original; internal quotation marks omitted.]).

Thus, we conclude that the qualifying language included in the trial court's charge served to protect the defendant's constitutional rights and the instruction, therefore, did not contain a *Sandstrom* violation. With the qualifying language, the charge, "will be deemed to have intended," was not harmful in the present case. Nevertheless, it has become apparent to us, after further consideration of the issue, that the challenged portion of the charge, when viewed in isolation from the qualifying language concerning the permissive nature of the inference, could give rise to a danger of juror misunderstanding. See *State* v. *Schiappa*, 248 Conn. 132, 175, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). "We believe that the time has come for us to ensure that the challenged language is not included in any future jury instructions." Id. Accordingly, in the exercise of our supervisory authority over the administration of justice, we direct our trial courts in the future to refrain from instructing jurors that one who uses a deadly weapon on the vital part of another "will be deemed to have intended" the probable result of that act and that from such a circumstance the intent to kill properly may be inferred.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.