## STATE OF CONNECTICUT *v.* TROY LOPES
### (AC 22596)

Foti, Flynn and Dupont, Js.

Argued March 20—officially released July 29, 2003

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Troy Lopes, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a) and carrying a pistol without a permit in violation of General Statutes § 29-35

(a).[1] On appeal, the defendant claims that the trial court improperly (1) instructed the jury on the charge of attempt to commit murder, (2) deprived him of a fair trial as a result of the court's remarks, criticism and elicitation of evidence from witnesses, (3) restricted cross-examination and (4) failed to admonish jurors as required. We reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. On September 7, 2000, at about 1:47 p.m., the defendant, who was driving a grayish Honda Accord, approached the victim, Sean Spencer, while he was standing outside the police substation at Stratford Avenue and Sixth Street in Bridgeport. They had had words some days earlier, and an exchange again took place. The defendant told Spencer that the defendant was "going to get him," and that he knew where Spencer worked and where his mother worked. Spencer replied that he knew where the defendant lived. At that point, the defendant threatened to kill Spencer. The parties were eight to ten feet apart during that exchange. The defendant, who had a grayish handgun that was five to

[1] The jury also found the defendant not guilty of one count of attempt to commit murder and of assault in the first degree. The court dismissed an additional charge of criminal possession of a firearm.

General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

six inches in length,[2] fired two gunshots at Spencer, who retreated behind a truck unharmed.[3]

Officer Raymond Ryan, a member of the Bridgeport police department, upon hearing the gunshots, observed a beige colored Honda proceeding away from the scene. He recognized the car as belonging to the defendant, who, two days earlier, had admitted ownership and produced paperwork to that effect. That evening, the police located the Honda parked across the street from the house of the defendant's grandmother, where the defendant had been living. The police found a .380 caliber shell casing in the backseat behind the driver's side. Additional facts will be set forth as necessary.

## I

The defendant claims that the court improperly instructed the jury on the law as applicable to the charge of attempt to commit murder, in the following three ways. First, the court's instructions included a mandatory presumption that the defendant had the intent to kill solely by his use of a deadly weapon. Second, the court instructed the jury on the full statutory definition of intent as set forth in General Statutes § 53a-3 (11). Third, the court instructed the jury on both subdivisions of the attempt statute. The defendant did not properly preserve his claim for appeal; he neither filed a request to charge on intent or attempt to commit murder, nor did he note his objection to the court's instruction on either intent or attempt to commit murder. The defen-

[2] The defendant, who did not testify during the trial, stipulated that he did not possess a pistol permit on the date in question.

[3] Although Spencer was later shot while he was working at a liquor store in Bridgeport at around 7:15 that evening, and he testified that the defendant was the perpetrator, the jury acquitted the defendant of both attempt to commit murder and assault in the first degree in connection with that incident.

dant seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[4]

"Under prong three of *Golding*, a challenged jury instruction constitutes a clear constitutional violation that clearly deprives a defendant of a fair trial if it is found reasonably possible that the jury was misled by the court's instruction." *State* v. *Tate*, 59 Conn. App. 282, 286, 755 A.2d 984, cert. denied, 254 Conn. 935, 761 A.2d 757 (2000).

We will review the defendant's claim pursuant to *Golding* because the record is adequate, and an improper instruction on an element of an offense is of constitutional magnitude. See *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998).

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals

---

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Citation omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 63 Conn. App. 529, 534, 777 A.2d 704, cert. denied, 256 Conn. 936, 776 A.2d 1151 (2001).

It is the defendant's contention that the instructions as a whole misled the jury and diluted the state's burden of proof. We agree.

A

The defendant first argues that the instructions misled the jury by creating a mandatory presumption that he had the intent to kill solely by virtue of his use of a deadly weapon.

The court instructed as follows: "An intent to cause death may be inferred circumstantially. Evidence as to the type of the weapon used, the manner in which it's used, the type of wound inflicted, the events leading to and immediately following attempt at the death of a victim. *One who uses a deadly weapon upon the vital part of another will be determined to have intended the probable result of that act,* and from such a circumstance, a proper inference may be drawn in some cases that there was an intent to kill. *And the use of a deadly weapon upon the vital part of another, it will be deemed that it is intended the probable result of that act* and, from such a circumstance, a proper inference may be drawn that there was an intent to cause death. Any inference may be drawn from the nature of the weapon, and the manner of its use is an inference of fact to be drawn by the jury from the consideration of these and all other circumstances in the case." (Emphasis added.)

It is the defendant's position that the phrases "will be determined to have intended" and "it will be deemed

that it is intended" impermissibly shifted the burden of proof. We disagree.

Our Supreme Court, in the exercise of its supervisory powers, directed trial courts not to use such language in the future. *State* v. *Aponte*, 259 Conn. 512, 522, 790 A.2d 457 (2002). *Aponte*, however, was decided after the defendant's trial. The defendant argues that although the court in *Aponte* found the charge not to be harmful, we should not so view the charge herein.

In the present case, however, as in *Aponte*, the court used permissive language, "may be inferred," as to the intent to cause death. "[P]ermissive language tempers the challenged portion of the instruction and ensures that a reasonable jury will not interpret the charge in an unconstitutional manner." Id., 521.

On the basis of our review of the jury charge as a whole, we conclude that it is not reasonably possible that the court's instruction misled the jury and, thus, the defendant was not deprived of a fair trial by that particular instruction.

B

The defendant next argues that it was improper for the court to read the entire statutory definition of intent as contained in General Statutes § 53a-3 (11). Specifically, he contends that the court, on three occasions, instructed the jury that "a person acts intentionally with respect to a result or to conduct described by a statute defining an offense when the conscious objective of that person is to cause a result or to engage in such conduct." "The specific intent to kill is an essential element of the crime of murder. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim." (Internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 322, 664 A.2d 743 (1995). The defendant specifically argues

that the court should not have read that portion of the definition concerning a person's conscious objective to *engage in conduct* because this part of the definition relates only to general intent crimes, and attempt to commit murder is a specific intent crime. We agree that that portion of § 53a-3 (11) dealing with intent to engage in proscribed conduct is irrelevant to a murder prosecution pursuant to § 53a-54a; *State* v. *Young*, 68 Conn. App. 10, 15, 791 A.2d 581, cert. denied, 260 Conn. 909, 795 A.2d 547 (2002); *State* v. *DeBarros*, 58 Conn. App. 673, 681–83, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000); and upon review of the entire charge, we conclude that the risk of juror confusion as a result of that improper instruction was not eliminated by the court's proper instruction on the elements of murder. Cf. *State* v. *Austin*, supra, 244 Conn. 236 (numerous proper instructions eliminated risk of juror confusion resulting from improper instruction); see also *State* v. *DeJesus*, 260 Conn. 466, 475, 797 A.2d 1101 (2002).

Our review of the entire charge discloses that the court, did properly instruct the jury as to the state's burden of proof regarding intent to cause a death necessary to convict the defendant on the charge of attempt to commit murder. The court instructed: "The first element the state must prove beyond a reasonable doubt is that the defendant had the kind of mental state required for the commission of the crime of murder. The element of the crime of murder is that the defendant intended to cause the death of another person." That instruction, however, did not eliminate any possible juror confusion concerning the element of intent. Rather, the jury was still left with the distinct impression that the defendant could be found guilty of attempt to commit murder if he had the intent to engage in the conduct of firing his gun. We do not observe numerous proper instructions that would overshadow the

improper "engaging in conduct" language, which pertains to a general intent crime.[5]

Because the improper instruction was given in regard to the definition of murder and not solely in the instruction dealing with the general definition of intent, and because there were not numerous proper instructions given, we conclude that the instructional error deprived the defendant of a fair trial, as it is reasonably possible that the jury was misled.

C

Last, the defendant argues that the court improperly read the entire attempt statute to the jury, "which further misled the jury because the inapplicable portion of the attempt statute defines the crime of engaging in conduct."

The court instructed: "After determining the intent of the defendant, the state must prove beyond a reasonable doubt either of the following: *That he intentionally engaged in conduct that would constitute the crime or if the attendant circumstances were as he believed them to be* or that this defendant intentionally did anything that, under the circumstances as he believed them to be, was an act constituting a substantial step in the course of conduct planned to culminate in the commission of the crime of murder." (Emphasis added.) Thereafter, the court further instructed: "Please remember, the state *must prove intent and conduct* beyond a reasonable doubt before you can find the accused guilty of an attempt to commit the crime of murder. If you find the state has proven beyond a reasonable doubt each of the elements of the crime of attempt to commit murder, then you shall find the defendant guilty. On

---

[5] The improper instruction also was given as to the charge of assault in the first degree. Although the jury acquitted the defendant on that charge and a second count of attempt to commit murder, we cannot conclude that the faulty repeated instruction did not mislead the jury.

the other hand, if you find the state has failed to prove beyond a reasonable doubt any one of the elements, then you shall find the accused not guilty." (Emphasis added.)

General Statutes § 53a-49 (a) defines criminal attempt. It provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a).

The information in the present case charged the defendant under § 53a-49 without citing a subsection. The defense was one of identity. The evidence was sufficient, and the defendant does not claim otherwise, to convict him under § 53a-49 (a) (2). Generally, a trial court's overinclusive jury charge would not deny a defendant his due process rights. "[A] factual insufficiency regarding one statutory basis, which is accompanied by a general verdict of guilty that also covers another, factually supported basis, is not a federal due process violation . . . ." (Internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 164, 778 A.2d 955 (2001), quoting *State* v. *Chapman*, 229 Conn. 529, 539, 643 A.2d 1213 (1994). Jurors are generally well equipped to analyze the evidence, and are in a position to be able to evaluate the testimony presented and to assess whether the evidence supported the charged theory. *Griffin* v. *United States*, 502 U.S. 46, 59, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991).

Although we might ordinarily conclude that the over-inclusive charge taken alone was harmless error,[6] under the particular circumstances of this case, we must conclude that the error of instructing improperly on subdivision (1) of § 53a-49 (a) misled the jury by appearing to focus on the conduct rather than on the result.

## II

The defendant next claims that the court's improper remarks, criticism of defense counsel's closing argument and elicitation of evidence from witnesses that was prejudicial to his case deprived him of a fair trial.

"The principles guiding a trial judge in conducting a criminal trial are well established. Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . . In a criminal trial, the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. . . . Consistent with his neutral role, the trial judge is free to question witnesses or otherwise intervene in a case in an effort to clarify testimony and assist the jury in understanding the evidence so long as he does not appear partisan in doing so." (Internal quotation marks omitted.) *State* v. *Solek*, 66 Conn. App. 72, 89–90, 783 A.2d 1123, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001). "Thus, when it clearly appears to the judge that for one reason or another the case is not being presented intelligibly to the jury, the judge is not

---

[6] "The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence . . . and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." (Citation omitted; internal quotation marks omitted.) *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 460, 610 A.2d 598 (1992).

required to remain silent. On the contrary, the judge may, by questions to a witness, elicit relevant and important facts." (Internal quotation marks omitted.) *State* v. *Robertson*, 254 Conn. 739, 770, 760 A.2d 82 (2000).

"This court has said that [j]udges in this state . . . are given wide latitude to comment fairly and reasonably upon evidence received at trial, but the court must refrain from making improper remarks which are indicative of favor or condemnation. . . . Even though a judge may take all reasonable steps necessary for the orderly progress of the trial, he must always be cautious and circumspect in his language and conduct." (Internal quotation marks omitted.) *State* v. *Pharr*, 44 Conn. App. 561, 570–71, 691 A.2d 1081 (1997). "Any claim that the trial judge crossed the line between impartiality and advocacy is subject to harmless error analysis." *State* v. *Burke*, 51 Conn. App. 328, 335, 723 A.2d 327 (1998), cert. denied, 248 Conn. 901, 732 A.2d 177 (1999).

The defendant only partially preserved his claim in that the court noted his objection as to the court's instructions; the defendant seeks *Golding* review on the remainder of his claim.[7]

During the state's case-in-chief, the defendant's mother, Carmen Lopes, testified that she owned the Honda Accord and that she did not give the car to her son to use. She testified that the defendant did not drive the car because he did not have a license. On cross-examination, she testified that she owned the car for about two weeks, and that the car was with her and her husband during that time. She also stated that she had an agreement with her son that he had to get a job and obtain his driver's license before he could use the car. On redirect examination, she testified that she told

---

[7] See footnote 4.

the police that she had bought the car for her son, but did not tell them about the agreement.

Following the examination, the court inquired:

"The Court: You seen [the defendant] drive a car?

"The Witness: Pardon me?

"The Court: You ever seen him drive?

"The Witness: Yes, I have.

"The Court: So, he knew how to drive?

"The Witness: Yes, he knew how.

"The Court: No question whether or not he had a license. Didn't really make any difference, did it?

"The Witness: Yes, it did.

"The Court: It didn't to him, if he wanted to drive.

"The Witness: Maybe to him it didn't make a difference, but it made a difference to me.

"The Court: To you. But you don't know what happened to that car on September 7?

"The Witness: No, I don't. All I know was the—

"The Court: Was it with you?

"The Witness: It was at my house.

"The Court: All day?

"The Witness: It wasn't with me all day. I was at work, Your Honor. The car was parked at 183 Livingston Place. To my knowledge, it was still—no let me back up. On—

"The Court: Thank you.

"The Witness: No. I want to tell the truth.

"The Court: I don't want to hear it at this time. Okay.

"The Witness: Okay, Your Honor.

"The Court: Step out."

Neither the state nor the defense attempted to ask any further questions.

"Whether or not the trial judge shall question a witness is within his sound discretion. The extent of the examination is likewise within his sound discretion. Its exercise will not be reviewed unless he has acted unreasonably, or, as it is more often expressed, abused his discretion." (Internal quotation marks omitted.) *State* v. *Bember*, 183 Conn. 394, 401, 439 A.2d 387 (1981). "The trial judge can question witnesses both on direct and cross-examination. . . . [I]t may be necessary to do so to clarify testimony as [the judge] has a duty to comprehend what a witness says . . . [and] to see that the witness communicates with the jury in an intelligible manner. . . . While no precise theorem can be laid down, we have held that it is proper for a trial court to question a witness in endeavoring, without harm to the parties, to bring the facts out more clearly and to ascertain the truth . . . and [intervene] where the witness is embarrassed, has a language problem or may not understand a question." (Citations omitted; internal quotation marks omitted.) *State* v. *Fernandez*, 198 Conn. 1, 12–13, 501 A.2d 1195 (1985). "The risk of constitutional judicial misconduct is greatest in cases where the trial court has interceded in the merits of the trial. See [id.], 14–17 (impugning credibility of defense's only witness violated right to fair trial); but see *State* v. *Tatum*, 219 Conn. 721, 739–42, 595 A.2d 322 (1991) (questioning of witnesses did not serve to endorse state's view of case)." *State* v. *Woodson*, 227 Conn. 1, 31, 629 A.2d 386 (1993).

Our review of the record leads us to conclude that the colloquy did not cause the court to assume the role of advocate. The questioning was neither extensive nor

irrelevant. The "judge took no position of advocacy regarding the outcome of the case, and made no improper comments on the significance of the evidence presented. At no time did the judge convey to the jury his opinion as to the guilt or innocence of the defendant." *State* v. *Gordon*, 197 Conn. 413, 425–26, 504 A.2d 1020 (1985). The defendant, therefore, cannot prevail on his unpreserved claim.[8]

The defendant next argues that the court "added to the prejudicial impact of the testimony by Mrs. Lopes by later instructions to the jury that defense counsel had inappropriately discussed testimony in her closing argument that was not supported by the evidence . . . ."

During final argument, defense counsel argued: "The state may wish you to perhaps ignore the little fact that a box of ammunition matching the shell casings that were found at both the liquor store and Sixth Street were found not on [the defendant], not in his car, but in a car driven by Devon Smith . . . ."

The court instructed as follows: "Counsel's arguments to you, both sides, I'm not going to pick on anybody, but there are rules, and the fact of the matter is, counsel may not suggest the evidence to you which has not been presented here in this courtroom under oath from the witness stand. You have to understand that. Where it does come in, there has been discussion here about the Nissan car, there is absolutely no evidence in this case about a Nissan car being involved in operation by anybody. Anyone. That's known. *There's no evidence of this person who was seen coming to the car with a set, with a key for it and a key for a*

---

[8] Although the court's questioning did not violate the defendant's constitutional rights, our Supreme Court has cautioned that "trial courts should be careful to avoid giving the impression of passing upon the credibility of witnesses." *State* v. *Robertson*, supra, 254 Conn. 782.

*Honda; he never got in the car, he never drove the car, from the evidence in this case. And for counsel to suggest to you that he's the driver of the car, it's improper. There's no evidence of that. Cannot do it.* Understand that. So, be careful. Be guided by what you believe came from the witness stand under oath. Not the opinion of others, me included. You may draw reasonable inferences from the established facts in the case. Inferences which you draw must not be from a guess upon the evidence which an attorney may have presented to you in argument from that attorney's knowledge which was not presented to you as evidence during the course of the trial." (Emphasis added.)

Defense counsel also argued: "And there is not one, not one corroborating witness to what [Spencer] has said happened as to the identity of the shooter in either case. Yes, Officer Ryan says he sees a Honda going at a rapid rate of speed down the street, but he's not out there. He can't corroborate who the shooter was. He can't say who is in the Honda. He can't say anything, beyond a reasonable doubt, [about] what he observed, and that is a Honda down the street. In fact, it was so far away, he couldn't notice any [license] plate. He didn't tell you it had tinted windows. He didn't tell you it had body damage. He couldn't tell you it was painted, body work on the side. That's how far away it was. All he could say was, oh, that's [the defendant's] car from that distance. How anxious was Officer Ryan to tell you that it was [the defendant's] car? Maybe too anxious."

The court, during its instructions, stated: "I never heard anyone on this witness stand testify that the windows were blackened in any Honda automobile, but you may have. But if you did not hear it, the suggestion by counsel in a case as to that being an impairment for someone to see through a window, there's no evidence of it. You cannot consider it. That's not subject of cir-

cumstantial evidence. That's something that's observable in the eye of the observer who would testify here."

The defendant argues that those instructions, "coupled with the court's questions asked of Mrs. Lopes, clearly conveyed the court's skepticism of [his] entire defense."

"Counsel may comment upon facts properly in evidence and upon *reasonable* inferences to be drawn from them. . . . Counsel may not, however, comment on or suggest an inference from facts not in evidence." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Arline*, 223 Conn. 52, 58, 612 A.2d 755 (1992). We conclude, after a careful review of the record, that the court's instructions did not deprive the defendant of a fair trial.

The defendant also complains that the court "placed inadmissible and prejudicial evidence before the jury" when the court, in ruling on an objection by the prosecutor, stated: "You [defense counsel] objected to uncharged criminal conduct."

During the cross-examination of Vincent Manjoney, the surgeon who treated Spencer, defense counsel asked Manjoney about a similar gunshot wound from a prior occasion.

"[Defense Counsel]: And this—in the course of your exploratory surgery, I notice from the medical records, that, doctor, there was another bullet you located in his body unrelated to this incident. Correct?

"[The Witness]: That's correct.

"[Prosecutor]: I'd object, Your Honor.

"The Court: Overruled. It's unrelated to the incident?

"[Defense Counsel]: It's unrelated to the incident. It's in the medical records.

"The Court: I would sustain the objection if it's unrelated. Your question poses it in that fashion, then it's irrelevant. Next question, please.

"[Defense Counsel]: The—Mr. Spencer had sustained damage in his body prior to this incident for a similar gunshot wound that you treated him for on a prior occasion unrelated to this?

"[Prosecutor]: I'd object, Your Honor.

"The Court: Sustain the objection. Disregard the question. Do not ask it again.

"[Defense Counsel]: Did you observe any injury in his body that was not caused by this?

"The Court: I suggest that you do not do that. Now, I'm doing it for a good reason, ma'am. You objected to uncharged criminal conduct. Now, I don't know where we're going with that, but do not open the door unless you're able to close it. We're here for one case."

Our review of the record fails to disclose exactly what "door" would be opened by that question and answer, but we realize that the court is in the best position to determine where a particular line of questioning will lead and to whose detriment. Although the jury was not entitled to know about the defendant's motion in limine concerning uncharged misconduct by the defendant, the comment itself was not so prejudicial as to affect the integrity of the trial itself.[9]

---

[9] The court's instructions included an admonition to disregard what the jury might perceive as the court's opinion about the case. The court stated: "You should not draw any inferences whatsoever from any questions I may have asked any witness in the case. If I did, give no consideration to the answer given to the [question] which I may have asked." The court also instructed as follows: "[I]f I have made any reference to the position of the state or the accused, I assure you, it's not my intention to convey to you either directly or indirectly how this court feels about the outcome of this case. It is not my concern. It's none of my business. This is your case. You decide it unhampered by anybody else's opinion. That includes me as well as those voiced by counsel. That's not to be considered by you. You decide the case based on what you believe to be the cold, hard facts of this case. The case belongs to you."

The defendant contends that those alleged improprieties taken individually or viewed together violated his right to a fair trial.[10] Because we find no individual constitutional alleged impropriety in the instruction to the jury to constitute reversible error, we cannot view all alleged errors together to so find. See *State* v. *Tillman*, 220 Conn. 487, 505, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

### III

The defendant next claims that the court improperly restricted his cross-examination of a key witness, Spencer, thereby violating the defendant's right of confrontation under the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut.[11]

During cross-examination of Spencer, defense counsel asked if he intended to make application to the victim's compensation fund after the case was over,

[10] We find no merit to the defendant's additional claim that the court made "gratuitous remarks" about "other statements the court considered to be prejudicial." Our review of the record discloses that on two occasions, defense counsel objected to statements made by Spencer because they were "prejudicial." The court replied, "I'm sure it is," and, "it is prejudicial, of course." The court should not exclude evidence merely because it is prejudicial. "[A]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates *undue* prejudice so that it threatens an injustice were it to be admitted." (Emphasis added; internal quotation marks omitted.) *State* v. *Pare*, 75 Conn. App. 474, 481, 816 A.2d 657, cert. denied, 263 Conn. 924, 823 A.2d 1216 (2003).

[11] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

"Because the defendant did not separately address his state constitutional claim, we resolve this issue only on federal constitutional grounds." *State* v. *Maye*, 70 Conn. App. 828, 831 n.1, 799 A.2d 1136 (2002).

and he answered no. Defense counsel then asked if it was true that Spencer had told people that it was his intention to so do, and he replied no. When she asked Spencer if he believed "that by giving testimony favorable to the state that your chances of receiving compensation from the victim's compensation fund are increased," the prosecutor objected.

The court stated: "Well, first and foremost, I don't know if he has already made application and his bills have been paid. I know St. Vincent's Hospital would like to know how they're being paid. But what's the difference? We don't know what motivates the commissioners on the victim's commission. There's three of them. They make the decision, and there's no guidelines, so."

Defense counsel began to argue that "what he believes as motivation would be," but the court interjected, stating, "[w]ell, we're going to get into what he has been told by everybody?" Defense counsel stated, no, "[j]ust what he believes by testifying favorably . . . ." The court refused to allow the question, stating: "I understand that. He answers the question, and the next thing is why? What basis do you make that belief on? And we get into a whole different set of questions, which are irrelevant to these proceedings. The question in this case is, who shot him on the night in question?"

Defense counsel continued to question Spencer:

"[Defense Counsel]: So, you came into court today and you identified [the defendant] as the person responsible for shooting at you?

"[The Witness]: Right.

"[Defense Counsel]: Stratford Avenue and the liquor store, correct?

"[The Witness]: Correct.

"[Defense Counsel]: Isn't it true that last week, when you were brought into the courthouse, when you were speaking amongst other inmates down in lockup, you revealed and confided to them that you were unsure of the identity of the shooter?

"[Prosecutor]: I would object, Your Honor.

"The Court: Sustain the objection.

"[Prosecutor]: There's no foundation.

"The Court: I have no way of knowing what that's all about. Whether in fact that ever happened, I don't know, unless you have a bona fide offer that you can tell me as a commissioner of this court you have reliable information that that occurred. I don't mean from this, some inmate.

"[Defense Counsel]: I have three inmates who say the same thing.

"[Prosecutor]: Objection, Your Honor, to that comment.

"The Court: No. Disregard."

On redirect examination, the state asked Spencer if since the day of the incident or "since September 14, the time you gave your statement, to today's date, did you ever recant part of that statement?" Spencer answered no. On recross-examination, defense counsel asked Spencer, "[y]ou testified on redirect [examination] that you never had no doubt in your mind who was the shooter, and you never recanted any part of your statement. Once again, I'm asking you, do you recall recanting part of your statement with respect to the identification last week in lockup?" The prosecutor stated, "[t]hat's a misrepresentation," and the court sustained the objection.

"A trial court's ruling on the admissibility of evidence is afforded great deference. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . Furthermore, [t]o establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Citations omitted; internal quotation marks omitted.) *State* v. *Valentine*, 255 Conn. 61, 69, 762 A.2d 1278 (2000). After our own review of the challenged evidence, we conclude that the court did not abuse its discretion.

"The sixth amendment to the United States constitution guarantees the right of an accused in a criminal prosecution to confront and cross-examine the witnesses against him. . . . [T]he primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Therefore, an accused's right to cross-examination to elicit facts tending to show motive, interest, bias and prejudice may not be unduly restricted by the wide discretion of the trial court. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"We have emphasized in numerous decisions, however, that the confrontation clause does not give the defendant the right to engage in unrestricted cross-examination. . . . [T]he right to cross-examine a witness pertaining to specific acts of misconduct is limited in three distinct ways. . . . First, cross-examination may only extend to specific acts of misconduct other than a felony conviction if those acts bear a special significance upon the issue of veracity. . . . Second, [w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court. . . . Third, extrinsic evidence of such acts is inadmissible." (Citations omitted; internal quotation marks omitted.) Id., 70–71.

Spencer answered the initial question regarding the victim's compensation fund in the negative. Regardless of whether that was true or not, any further inquiry certainly would have been irrelevant. Even if Spencer had planned to file a claim, which he denied, testifying, cooperation with the prosecution or even a prosecution itself are not prerequisites to receive compensation. See General Statutes § 54-204 et seq.

The defendant also claims he was unduly restricted in cross-examination of Spencer relative to Spencer's alleged recanting of his identification of the defendant as the shooter. The court asked for a "bona fide offer" of reliable information that a recanting had occurred. The defendant concedes that he made no offer of proof. We conclude that the court neither infringed on the defendant's right of confrontation nor abused its discretion in sustaining the state's objection to the questions asked.

IV

Last, the defendant challenges the court's partial failure to comply with Practice Book § 42-14 (a).[12] The

---

[12] Practice Book § 42-14 (a) provides: "The judicial authority shall cause the jurors selected for the trial to be sworn or affirmed in accordance with

defendant alleges that the court failed to admonish the jurors not to read, to listen to or to watch any news accounts of the defendant's case. He argues that it is impossible to go back in time and try to re-create whether the jurors heard, read or watched something about the case, and, therefore, a showing of prejudice is virtually impossible. The defendant claims the court's failure to fully comply with Practice Book § 42-14 constituted plain error or violated his constitutional right to due process.

The court did instruct the jury not to discuss the matter with each other or with anyone else, but clearly did not fully comply with Practice Book § 42-14 (a).

A court violates a defendant's constitutional right to an unprejudiced jury when it instructs jurors that they may discuss the case among themselves before the case is submitted for deliberations. *State* v. *Washington*, 182 Conn. 419, 429, 438 A.2d 1144 (1980). In this matter, the court gave only a partial instruction rather than an incorrect instruction. Although there may be error in failing to admonish the jury not to read, to listen to or to view news reports, we conclude that under the particular circumstances of this case, it was harmless. "If error touches a less basic constitutional right, we sometimes apply the 'harmless error' exception, but only sparingly, in a few, discrete circumstances." (Internal quotation marks omitted.) *State* v. *Cohane*, 193 Conn. 474, 485, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984).

We look to determine if the error affected the outcome of the case; did the error have little, if any, likeli-

---

General Statutes §§ 1-23 and 1-25. The judicial authority shall admonish the jurors not to read, listen to or view news reports of the case or to discuss with each other or with any person not a member of the jury the cause under consideration, except that after the case has been submitted to the jury for deliberation the jurors shall discuss it among themselves in the jury room."

hood of having changed the result of the trial. Even if we assume the omitted instruction to be constitutional error, we nevertheless may apply the harmless error rule. See *Chapman* v. *California*, 386 U.S. 18, 21–22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Absent a showing of prejudice,[13] we cannot deem that the defendant, who did not seek an admonishment at any point during the trial, is entitled to an automatic reversal of his conviction.

The judgment is reversed only as to the conviction of attempt to commit murder and the case is remanded for a new trial on that charge. The judgment is affirmed as to the conviction of carrying a pistol without a permit.

In this opinion the other judges concurred.

---

[13] The record does not disclose that there indeed was any publicity or news media coverage of the matter during the trial or during jury deliberations.