******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE LEILAH W.*
(AC 38620)

DiPentima, C. J., and Keller and Prescott, Js.**

*Argued April 7—officially released June 3, 2016****

(Appeal from Superior Court, judicial district of
Litchfield, Juvenile Matters, Ginocchio, J.)

*David E. Schneider*, *Jr.*, for the appellant (respondent father).

*Cynthia Mahon*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general, *Gregory T. D'Auria*, solicitor general, and *Benjamin Zivyon*, assistant attorney general, for the
appellee (petitioner).

*Rebecca Mayo Goodrich*, for the minor child.

*Opinion*

PRESCOTT, J. The respondent father, Richard L., appeals from the judgment of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, terminating his parental rights with respect to his daughter, Leilah W.[1] On appeal, the respondent claims that the court improperly (1) failed to conduct a pretrial canvass of him in accordance with our Supreme Court's decision in *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015); and (2) determined, in accordance with General Statutes § 17a-112 (j) (3) (B) (i), that the petitioner had proven by clear and convincing evidence that Leilah previously was adjudicated neglected and that the respondent has failed to achieve a sufficient degree of personal rehabilitation to encourage a belief that he could assume a responsible position in Leilah's life within a reasonable period of time.[2] We affirm the judgment of the trial court.

The record reveals the following relevant facts, which are uncontested or were found by the trial court, and procedural history. Leilah was born on September 2, 2013. On September 26, 2013, the respondent was arrested on burglary charges and incarcerated. The Department of Children and Families (department) obtained an order in October, 2013, granting the petitioner temporary custody of Leilah after her mother tested positive for opiates and marijuana. The petitioner subsequently filed a neglect petition. Both the application for the order of temporary custody and the neglect petition identified Leilah's father as Kenneth A.; however, a December 16, 2013 paternity test later revealed that Kenneth A. was not Leilah's biological father.

Leilah was adjudicated neglected on February 11, 2014, and committed to the care and custody of the petitioner. On March 21, 2014, a paternity test identified the respondent as Leilah's biological father.[3] The petitioner filed a motion on July 21, 2014, asking the court to order specific steps for the respondent,[4] which the court approved and ordered on August 6, 2014. On September 10, 2014, the court approved a permanency plan of reunification and again issued specific steps to both parents.

On May 19, 2015, the petitioner filed a petition to terminate the parental rights of Leilah's mother and the respondent. The petitioner also filed a social study in support of that petition. With respect to the respondent, the petition sought termination on the ground that no ongoing parent-child relationship existed between the respondent and Leilah. On July 15, 2015, over the objection of the respondent, the court approved a permanency plan of termination and adoption. At that time, Leilah's mother consented to termination of her parental rights.

Shortly thereafter, the petitioner successfully moved

to amend the termination petition with respect to the respondent. The amended petition was filed on August 5, 2015, and included as an additional ground for termination that Leilah previously had been adjudicated neglected and that, considering Leilah's age and needs, the respondent had failed to achieve a degree of personal rehabilitation necessary to encourage a belief that he could assume a responsible position in Leilah's life within a reasonable amount of time. With the amended petition, the petitioner also filed an amended social study.

A trial was conducted on the operative amended petition on October 5, 2015, before Judge Ginocchio. The respondent was represented by counsel throughout the proceedings. Both the petitioner and the respondent presented exhibits and called witnesses. The petitioner's sole witness was Reagan Horvay, the department social worker assigned to Leilah's case. Horvay was cross-examined extensively by the respondent's attorney. The respondent testified on his own behalf and also presented testimony from Elizabeth Cooper, a counselor with the Department of Correction, and Carl Hoyt, the department social worker case aide who supervised his visitations with Leilah. The attorney for the minor child presented testimony from Leilah's foster mother.

Shortly after the close of evidence, the assistant attorney general representing the petitioner informed the court that it had not conducted a canvass of the respondent prior to the start of trial in accordance with our Supreme Court's recent decision in *In re Yasiel R.*, supra, 317 Conn. 773. In *In re Yasiel R.*, which was decided on August 18, 2015, less than two months prior to the start of the respondent's trial, our Supreme Court held that due process did not require a trial court to canvass a parent in a termination proceeding regarding her counsel's decision not to contest the evidence presented against her and to waive her right to a full trial. Id., 787–88. Nevertheless, pursuant to the court's supervisory powers over the administration of justice, it stated that "public confidence in the integrity of the judicial system would be enhanced by a rule requiring a brief canvass of all parents *immediately before a parental rights termination trial* so as to ensure that the parents understand the trial process, their rights during the trial and the potential consequences." (Emphasis added.) Id., 794.

To remedy its oversight in the present case, the court asked the parties to return to court on October 7, 2015, at which time the court advised the respondent that it had failed to canvass him in accordance with *In re Yasiel R.* prior to trial. The court indicated that although the respondent had been afforded a full trial with an attorney present, it nevertheless was obligated to advise the respondent of certain rights and to provide him

with an opportunity to consult with his attorney regarding those rights. The following colloquy ensued:

"The Court: So what I would have said before trial is, before we begin this hearing on the termination of parental rights petition, the parent should understand that in the event the court terminates your parental rights this will result in the end of your legal relationship with your child. You will have no legal rights, no authority and no responsibility for the child. You will no longer have any rights to make decisions of any kind affecting the child. You will not be entitled to any state or federal benefits or entitlements on behalf of the child. The child will be eligible to be adopted.

"And I'm assured that you and Attorney [Brya Ann] Darley [the respondent's counsel] did discuss all that before the trial. Correct?

"[The Respondent]: Yes, sir.

"The Court: And Attorney Darley—

"[The Respondent's Counsel]: Yes, Your Honor.

"The Court:—you confirmed that?

"It goes on to say, at the hearing you will have the right to be represented by an attorney, you will have your lawyer with you, your lawyer will help protect your legal rights. Those legal rights include the right to question, confront and cross examine any witness to test their memory and determine if they are telling the truth. You will have the right to object to testimony and to the admission of any documents or exhibits including any social studies or psychological reports. The objections must be made in accordance with the rules of evidence. You will have the right to have your own defense put on for you and you may call your own witnesses to assist you in challenging the allegations made against you. You have the right to testify—that is, tell your side of the story if you want to do so, but no one can make you testify because you'll still have the right to remain silent. If you do not testify the court could draw an adverse inference against you—that means the court could decide that you were not testifying because your testimony would not be helpful to you. Finally, you are advised that if you do not present any witness on your own behalf or do not cross examine witnesses, the court will decide the matter based upon the evidence presented at the trial.

"Do you have any questions you wish to ask, please consult with your attorney first. So, I'll have you consult with your lawyer and then let me know if you have any questions about what I've just read to you.

"[The Respondent]: I have no questions, sir.

"The Court: All right. And anything further on that?

"[The Respondent's Counsel]: No, Your Honor.

"The Court: All right. So the record shall reflect that I did canvass him pursuant to the supervisory authority of the Supreme Court of the State of Connecticut."

The hearing concluded shortly thereafter. At no time during the hearing did the respondent or his counsel voice any objection regarding either the content of the court's canvass or its failure to conduct the canvass pretrial. The respondent did not file any posthearing motion seeking a mistrial, asking to reopen the evidence, or requesting any other additional relief.

The court issued a written decision on October 26, 2015, granting the petition to terminate the parental rights of the respondent and, by consent, Leilah's mother. With respect to the respondent, the court found that the petitioner had proven by clear and convincing evidence both grounds for termination asserted in the operative amended petition.

First, the court found, pursuant to § 17a-112 (j) (3) (B) (i), that Leilah had been adjudicated neglected or uncared for in a prior proceeding on February 11, 2014, and that the respondent had failed to rehabilitate sufficiently so that, within a reasonable period of time, he could assume a responsible position in Leilah's life. With respect to this ground, the court noted that the respondent just recently had been released from prison, and that he was obligated to reside at a halfway house until July, 2016, and could not have custody of a child there. The court also found that although the respondent had completed several programs while incarcerated, he had not addressed his domestic violence issues, and had no intention of seeking treatment or taking medication for his bipolar disorder, which the court described as largely untreated. Further, according to the court, there were no prospects for housing or meaningful employment in the respondent's future. Of particular concern to the court was the lack of any "viable parenting plan on the horizon." The court concluded that because the respondent had "failed to demonstrate any significant periods of sobriety, employment and lack of criminal activity while in the community," that, considering the needs of a young child like Leilah, the respondent could not be "in a position to be a placement resource for the child within a reasonable time."[5]

Second, the court found that the petitioner also had proven by clear and convincing evidence that termination of parental rights was appropriate because the respondent lacked any parent-child relationship with Leilah. The court found the following facts particularly relevant to this ground for termination. Despite being aware during the mother's pregnancy that he potentially could be the father, the respondent "yielded to the mother's request to allow [Kenneth A.] to take responsibility for Leilah." The respondent, who has been incarcerated for much of Leilah's life, has visited with Leilah

only once a month, and, because of his incarceration, his contact during visits was restricted. For example, he was not permitted to hold her, feed her, comfort her, or change her. Although Leilah sometimes referred to the respondent as "daddy," she also referred to other males as "daddy." The respondent's incarceration had prevented him from having a meaningful relationship with his child. No emotional bond existed between the respondent and Leilah, whose only memories of the respondent were formed during her visits with him in prison. The court concluded that "[t]o permit additional time to develop a parent child relationship with his daughter would not be in Leilah's best interest because [the respondent would] not be released from a half[way] house until July of 2016 and Leilah's permanency cannot be delayed."

After considering and making written findings regarding the criteria set forth in § 17a-112 (k), the court determined that termination of the respondent's parental rights was in the best interest of Leilah. Accordingly, the court terminated the parental rights of both parents, and appointed the petitioner as Leilah's statutory parent for the purpose of securing an adoptive family or other permanent placement. This appeal followed.[6]

I

The respondent first claims that he is entitled to a new trial because the court improperly failed to conduct a pretrial canvass of him in accordance with the supervisory rule announced by our Supreme Court in *In re Yasiel R.*, supra, 317 Conn. 773. He argues that the court's effort to advise him of his rights after the close of evidence was insufficient to remedy the error because it failed to satisfy the purpose underlying the pretrial canvass mandated by *In re Yasiel R.* The petitioner, on the other hand, responds that, under the facts of this case, which are distinct from those that led to the decision in *In re Yasiel R.*, the trial court did not commit reversible error by providing the canvass after the close of evidence, and the respondent has failed to demonstrate how he was prejudiced by the late canvass. We agree with the petitioner.

At the outset, we note that the respondent never distinctly raised any claim of error before the trial court regarding the canvass and, thus, failed to properly preserve his claim for appellate review.[7] After the court acknowledged its error in failing to canvass the respondent at the start of the trial, it attempted to remedy that error by providing an advisement of rights after the close of evidence. The respondent and his counsel acquiesced to the late canvass, never indicating to the court any dissatisfaction with the court's actions or arguing that the respondent had been irreparably harmed and a new trial was necessary.

In accordance with our case law and rules of practice,

appellate review generally is limited to issues that were distinctly raised at trial. *State* v. *Canales*, 281 Conn. 572, 579, 916 A.2d.767 (2007); see also Practice Book § 60-5 ("court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). "Only in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." (Internal quotation marks omitted.) *State* v. *Canales*, supra, 579. "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *In re Azareon Y.*, 309 Conn. 626, 635, 72 A.3d 1074 (2013).

It is equally well settled, however, that a reviewing court, although not *bound* to consider a claim that was not raised to the trial court, may do so at its discretion. See *Persico* v. *Maher*, 191 Conn. 384, 403, 465 A.2d 308 (1983) (although appellate court not bound to consider unpreserved claims of error, it may elect to do so on occasion, "not by reason of the appellant's right to have it determined but because in our opinion in the interest of public welfare or of justice between individuals it ought to be done" [internal quotation marks omitted]). We are unaware of any statutory or procedural rule limiting that discretion. Several reasons convince us to review the respondent's claim in this instance, despite his failure to raise any issues before the trial court.

First, the petitioner will not be unfairly prejudiced if we review the claim. She has fully addressed the merits of the respondent's claim in her brief, and, although as part of that discussion she mentions that the respondent never raised any issue concerning the late canvass to the trial court, she does not directly assert that the respondent failed to preserve his claim or provide analysis of that issue. Second, the precise contours of our Supreme Court's decision in *In re Yasiel R.* have yet to be fully explored or explained, and, thus, our consideration of the issue raised by the respondent may be beneficial in defining the parameters of this new supervisory rule. Finally, because the trial court acknowledged its error in failing to give the required canvass prior to the start of trial, our review of the respondent's claim, particularly whether that error should automatically result in a new trial, would not amount to the type of ambush of the trial court that we ordinarily attempt to avoid by eschewing review of unpreserved claims.[8] Whether the trial court's failure to strictly comply with the rule announced in *In re Yasiel R.* warrants the granting of a new trial raises a mixed question of law and fact over which we exercise plenary review. See *In re Joseph W.*, 121 Conn. App. 605, 616, 997 A.2d 512 (2010), aff'd, 301 Conn. 245, 21 A.3d 723 (2011); see

also *In re Daniel N.*, 163 Conn. App. 322,    A.3d (2016). Having decided to exercise our discretion to review the respondent's unpreserved claim, we turn to our consideration of its merits.

Our Supreme Court exercised its supervisory powers in *In re Yasiel R.* to announce a new rule that, although not constitutionally required, it concluded was necessary to protect the perceived fairness of the judicial system with regard to termination of parental rights proceedings. In setting forth the parameters of its newly crafted canvass requirement, our Supreme Court stated: "[B]y exercising our supervisory authority in the present case, we are promoting public confidence in the process by ensuring that all parents involved in parental termination proceedings fully understand their right to participate and the consequences of the proceeding. We conclude, therefore, that it is proper to exercise our supervisory power in the present case and require that, in all termination proceedings, the trial court must canvass the respondent *prior to the start of the trial.* The canvass need not be lengthy as long as the court is convinced that the respondent fully understands his or her rights. In the canvass, the respondent should be advised of: (1) the nature of the termination of parental rights proceeding and the legal effect thereof if a judgment is entered terminating parental rights; (2) the respondent's right to defend against the accusations; (3) the respondent's right to confront and cross-examine witnesses; (4) the respondent's right to object to the admission of exhibits; (5) the respondent's right to present evidence opposing the allegations; (6) the respondent's right to representation by counsel; (7) the respondent's right to testify on his or her own behalf; and (8) if the respondent does not intend to testify, he or she should also be advised that if requested by the petitioner, or the court is so inclined, the court may take an adverse inference from his or her failure to testify, and explain the significance of that inference. Finally, the respondent should be advised that if he or she does not present any witnesses on his or her behalf, object to exhibits, or cross-examine witnesses, the court will decide the matter based upon the evidence presented during trial. The court should then inquire whether the respondent understands his or her rights and whether there are any questions. This canvass will ensure that the respondent is fully aware of his or her rights at the commencement of the trial. It will neither materially delay the termination proceeding nor unduly burden the state." (Emphasis added.) *In re Yasiel R.*, supra, 317 Conn. 794–95. The court stressed that the canvass was required in all parental termination cases, not just in those cases in which the respondent's attorney chooses not to contest evidence, as was the case in *In re Yasiel R.*

Although this court recently held that the *In re Yasiel R.* canvass requirement must be applied retroactively,

and we ordered a new trial in a termination proceeding in which the parent *never* received a canvass regarding his rights; *In re Daniel N.*, supra, 163 Conn. App. 333–37; we are unconvinced under the facts of the present case that the trial court's failure strictly to comply with the Supreme Court's supervisory rule by canvassing the respondent after the close of evidence at the termination trial ended requires reversal of the judgment of termination and a new trial. We agree with the petitioner that our Supreme Court's decision in *State* v. *Smith*, 275 Conn. 205, 881 A.2d 160 (2005), is instructive in resolving the respondent's claim because it demonstrates that a trial court's failure to comply with a supervisory rule does not automatically require reversal and a new trial in all cases.

In *Smith*, the defendant raised an unpreserved claim that he was entitled to a new criminal trial because the trial court had utilized language in its instructions to the jury that our Supreme Court, pursuant to its supervisory powers, previously had instructed courts to refrain from using. Id., 237; see also *State* v. *Aponte*, 259 Conn. 512, 522, 790 A.2d 457 (2002). The Supreme Court determined, consistent with its decision in *Aponte*, that the trial court's use of the prohibited language did not implicate the defendant's constitutional rights, and, thus, he was not entitled to *Golding* review.[9] *State* v. *Smith*, supra, 275 Conn. 239. Further, despite the trial court having clearly violated a supervisory rule, the Supreme Court concluded that the defendant was not entitled to a reversal either under the plain error doctrine; id., 239–40; or pursuant to the court's supervisory authority. Id., 242.

With respect to whether the trial court's action amounted to plain error, the Supreme Court explained that although it had directed trial courts to discontinue use of the challenged jury instruction language because it was concerned about the danger of misleading the jury, it was unconvinced in the case before it that any such danger actually existed or that the trial court's error in using the language was "so significant as to affect the fairness and integrity of or the public confidence in the proceeding." Id., 240. Similarly, the Supreme Court declined to reverse the judgment on the basis of its supervisory authority, stating: "The trial court's failure to heed our direction to discontinue the use of the challenged jury instruction was not such an extraordinary violation that it threatened the integrity of the trial, and it certainly did not rise to the level of implicating the perceived fairness of the judicial system as a whole. The defendant does not suggest that the trial court deliberately disregarded this court's mandate. Nor do we consider a new trial necessary to emphasize the importance of our direction in *Aponte* to the trial courts of this state." Id., 242. In other words, merely demonstrating that a trial court has violated a supervisory mandate is not alone enough to warrant a reversal.

The party raising the issue of noncompliance also must demonstrate actual harm.

In the present case, the trial court's noncompliance with our Supreme Court's supervisory rule does not rise to the level of reversible error. It is undisputed that the trial court failed to heed the new rule that our Supreme Court announced less than two months prior to the beginning of the respondent's trial, requiring a brief pretrial canvass of all parents subject to termination of their parental rights sufficient to convince the trial court that the parent fully understands his or her rights and the consequences of the termination proceeding. Nevertheless, as in *Smith*, there is nothing in the record that indicates that the court deliberately chose not to conduct the mandated canvass. Further, although not conducted before trial, the court did conduct a canvass of the respondent immediately after the trial and before any decision was rendered on the petition. Although this was not the procedure envisioned by our Supreme Court, and, accordingly should be avoided, if any concerns arose regarding the respondent's understanding of his trial rights, the trial court could have reopened the evidence to allow for additional proceedings if necessary. Accordingly, the trial court's failure to heed the Supreme Court's requirement that a canvass be conducted pretrial does not appear to have been "such an extraordinary violation that it threatened the integrity of the trial." *State* v. *Smith*, supra, 242.

In canvassing the respondent after the close of evidence, the court fully advised the respondent of his rights as a parent in a termination proceeding, including potential consequences. The respondent acknowledged that he had been informed of these same rights prior to trial by his attorney. The court gave the respondent an opportunity to consult with his attorney after the canvass, and the respondent indicated that he had no questions. There was no request for any additional consultation time or a continuance. At no time did the respondent or his counsel voice any objection to the trial court regarding the timing of the canvass or its content.[10] The respondent did not move for a mistrial, and never asked the court to reopen the evidence so that he could present any additional witnesses, raise challenges to the petitioner's exhibits or recall witnesses for cross-examination. Although the respondent argues on appeal that it was useless for the court to provide a canvass after the evidence was admitted and the witnesses questioned, he fails to explain how he would have proceeded differently had the court properly canvassed him prior to the start of trial.

On the basis of our review of the trial court's canvass, we conclude that the court reasonably could have concluded that the respondent fully understood the trial process, the rights he had during the trial, and the potential consequences of the termination of his parental

rights. The stated purpose underlying our Supreme Court's supervisory rule appears to have been effectuated in the present case. The respondent has failed to demonstrate that he was harmed by the trial court's failure to canvass him prior to the start of trial, and we do not believe that it is necessary to reverse the judgment simply to emphasize the importance of compliance with our Supreme Court's holding in *In re Yasiel R.* Accordingly, we reject the respondent's claim.

II

The respondent next claims that the court improperly concluded that termination of his parental rights was warranted in accordance with § 17a-112 (j) (3) (B) (i) because Leilah had been previously adjudicated neglected and, in light of her age and needs, the respondent had failed to achieve a sufficient degree of personal rehabilitation necessary to encourage a belief that he could assume a responsible position in Leilah's life within a reasonable period of time. The respondent argues that the court focused too narrowly upon his incarceration and on events that occurred prior to Leilah's birth, and contends that he has rehabilitated enough to assume a responsible role in his daughter's life. The petitioner argues that the respondent fails to recognize the statutory requirement that rehabilitation must happen within a reasonably foreseeable time period, and that the court's finding that he would be unable to rehabilitate in time for Leilah was firmly and fully based upon evidence in the record. We again agree with the petitioner.

We begin by setting forth applicable legal principles, including our standard of review. "A hearing on a termination of parental rights petition consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the court must determine whether the [petitioner] has proven, by clear and convincing evidence, a proper ground for termination of parental rights. . . . In the dispositional phase, once a ground for termination has been proven, the court must determine whether termination is in the best interest of the child." (Citations omitted.) *In re Vincent D.*, 65 Conn. App. 658, 664–65, 783 A.2d 534 (2001).

"Failure of a parent to achieve sufficient personal rehabilitation is one of six statutory grounds on which a court may terminate parental rights pursuant to § 17a-112. [See General Statutes § 17a-112 (j) (3) (B) (i).] That ground exists when a parent of a child whom the court has found to be neglected fails to achieve such a degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position in the life of that child." (Internal quotation marks omitted.) *In re G. Q.*, 158 Conn. App. 24, 25, 118 A.3d 164, cert. denied, 317 Conn. 918, 118 A.3d 61 (2015).

"Personal rehabilitation as used in [§ 17a-112 (j) (3) (B) (i)] refers to the restoration of a parent to his or her former constructive and useful role as a parent." (Internal quotation marks omitted.) Id. "The statute does not require [a parent] to prove precisely when [he] will be able to assume a responsible position in [his] child's life. Nor does it require [him] to prove that [he] will be able to assume full responsibility for [his] child, unaided by available support systems." (Internal quotation marks omitted.) *In re Shane M.*, 318 Conn. 569, 585, 122 A.3d 1247 (2015). Rather, "[§ 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation [he or she] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [he or she] can assume a responsible position in [his or her] child's life. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [his or her] ability to manage [his or her] own life, but rather whether [he or she] has gained the ability to care for the particular needs of the child at issue." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *In re Sheila J.*, 62 Conn. App. 470, 480, 771 A.2d 244 (2001).[11]

"A conclusion of failure to rehabilitate is drawn from both the trial court's factual findings and from its weighing of the facts in assessing whether those findings satisfy the failure to rehabilitate ground set forth in § 17a-112 (j) (3) (B). Accordingly . . . the appropriate standard of review is one of evidentiary sufficiency, that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court." (Emphasis omitted; internal quotation marks omitted.) *In re Shane M.*, supra, 318 Conn. 587–88. We will not disturb the court's subordinate factual finding unless they are clearly erroneous. Id., 587.

Before turning to the court's determination that the respondent has failed to rehabilitate, we address what we construe as challenges to the subordinate factual findings of the court. First, the respondent argues that the court improperly found that the "adjudicatory date" was May 19, 2015, whereas the correct date was actually August 5, 2015. Second, the respondent argues that although the court based its failure to rehabilitate conclusion in part on the respondent's unaddressed mental health issues, "there was no reliable evidence that he

had unaddressed mental health issues and that they needed to be addressed." We address each argument in turn.

A

The respondent first argues that the court improperly found that the "adjudicatory date" was May 19, 2015. "In the adjudicatory phase of a termination proceeding, the court is limited to considering events that precede the date of the filing of the petition or the latest amendment to the petition, also known as the adjudicatory date. Practice Book § [35a-7] (a). The court may consider, however, events occurring after the adjudicatory date during the dispositional phase of a termination proceeding. Practice Book § [35a-9]." *In re Sheena I.*, 63 Conn. App. 713, 721, 778 A.2d 997 (2001). Furthermore, "the court may rely on events occurring after the [adjudicatory] date . . . when considering the issue of whether the degree of rehabilitation is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time." (Emphasis omitted; internal quotation marks omitted.) *In re Selena O.*, 104 Conn. App. 635, 646, 934 A.2d 860 (2007).

In the present case, the court never specifically identifies May 19, 2015, as the "adjudicatory date" in its memorandum of decision. However, the court does indicate that the petition for termination was filed on May 19, 2015. The court never mentions that an amended petition was filed on August 5, 2015. Because the adjudicatory date is the date the latest amendment to the petition is filed, we agree that the court misidentified the relevant operative pleading and, thus, by implication, the adjudicatory date. Nevertheless, the respondent has failed to identify why this error is of any significance to the court's ultimate conclusion in this matter. For example, the respondent has failed to identify any evidence or event that the court improperly considered or failed to consider as a result of its failure to correctly identify the "adjudicatory date." Moreover, because the court may consider events that occurred both before and after the adjudicatory date in considering whether a respondent had failed to adequately rehabilitate, identification of the adjudicatory date is of no matter. Accordingly, because any error regarding identification of the adjudicatory date appears to be harmless, not only when viewed in isolation, but taken as a whole; see *In re Selena O.*, supra, 104 Conn. App. 645; a new trial clearly is not warranted.

B

The respondent also challenges the court's finding that, despite his participation in several programs while incarcerated, he had unaddressed mental health issues "including a bipolar disorder that has been largely left untreated." The respondent argues that there was no testimony presented at trial from a mental health pro-

vider or exhibit offered at trial indicating that the respondent had any mental health issues that needed to be addressed. We disagree.

As we have often repeated, "[b]ecause it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Severina D.*, 137 Conn. App. 283, 292, 48 A.3d 86 (2012). As the petitioner correctly indicates in her brief, there is ample evidence in the record to support the court's findings concerning the respondent's mental health, including admissions by the respondent.

For example, the amended social study filed with the operative petition was admitted as a full exhibit at trial without objection, and the court was entitled to rely upon that exhibit in support of its findings. See *In re Tabitha P.*, 39 Conn. App. 353, 368, 664 A.2d 1168 (1995). In the amended social study, the department summarized information that it had obtained regarding the respondent's mental health issues, including information obtained during telephone conversations with the respondent. According to the study, the respondent was diagnosed with bipolar disorder in 2002, and he had received extensive psychiatric care as an adolescent. Prior to incarceration, the respondent was receiving disability benefits for bipolar disorder. In addition to the social study, during her direct testimony, Horvay testified that the respondent had indicated when he became a party to the proceedings that he was bipolar and that he receives social security disability benefits, which he planned to continue receiving after his release from prison. She described him as having "vacillated from wanting to address [his bipolar disorder], to not wanting to address it," but had shared that his medication in the past had caused him to gain weight and that he "didn't want to be on medications again." Horvay also testified that the department believed the respondent needed to address his mental health issues despite the respondent's indicating that he did not believe he needed treatment. During his own testimony at trial, the respondent acknowledged that he had mental health issues that would require further evaluation and treatment.

On the basis of the aforementioned evidence and our review of the record, making every reasonable presumption in favor of upholding the court's factual findings as we must, we believe that the court's finding that the respondent continued to suffer from bipolar disorder that remained largely untreated is supported by the record and, thus, not clearly erroneous.

## C

Finally, we turn to the court's ultimate conclusion that the respondent had failed to rehabilitate. The respondent argues that the court relied too heavily upon his past incarceration and events prior to Leilah's birth as the basis for that conclusion. He contends that, contrary to the court's decision, he has achieved the requisite degree of personal rehabilitation. He points to the fact that he is no longer incarcerated, having been released to a halfway house. The respondent explains that the halfway house will assist him "in obtaining housing and getting into appropriate programs." He asserts that he is committed to being a better father and that he wants a relationship with his child. He notes that he completed a substance abuse program while incarcerated and that he participated in the Inside Out Dad Program, a parenting course for incarcerated fathers. Although the record certainly reflects that the respondent has made some strides toward improving his ability to manage his own life, on the basis of our review of the record as a whole, we are convinced that there is sufficient evidence to sustain the court's conclusion that he has failed to rehabilitate to a sufficient degree necessary to encourage a belief that he could assume as responsible role in Leilah's life in a reasonable period of time given her age and needs.

The respondent's suggestion that his incarceration was the principal factor relied upon by the trial court in reaching its decision is simply not supported by the record. Rather, this was only one of many factors considered by the court. Moreover, it was entirely appropriate for the court to take the respondent's incarceration into consideration in deciding the issue of whether the respondent had failed to rehabilitate. Although incarceration certainly is not indicative of abandonment of a child and never, in and of itself, provides a proper basis for terminating parental rights; see *In re Katia M.*, 124 Conn. App. 650, 661, 6 A.3d 86, cert. denied, 299 Conn. 920, 10 A.3d 1051 (2010); *In re Juvenile Appeal* (*Docket No. 10155*), 187 Conn. 431, 443, 446 A.2d 808 (1982); "incarceration nonetheless may prove an obstacle to reunification due to the parent's unavailability"; *In re Katia M.*, supra, 661; and, thus, is properly considered by the court in considering whether to terminate parental rights on the ground of failure to rehabilitate. Id., 664–65.

The court acknowledged that the respondent had made some progress, as evidenced by the programs that he had completed while incarcerated. Nevertheless, the court concluded that the respondent had failed to demonstrate "any significant period of sobriety, employment and lack of criminal activity while in the community." In reaching that conclusion, the court not only had evidence of the respondent's most recent incarceration, but his extensive criminal history, which

comprised more than twenty criminal convictions dating back to 2008, including several violations of probation. It was entirely appropriate for the court to consider this evidence in evaluating whether the respondent was likely to assume a responsible role in Leilah's life within an appropriate period of time. See *In re Sarah Ann K.*, 57 Conn. App. 441, 449–50, 749 A.2d 77 (2000). The respondent has yet to play any significant role in his daughter's life because he has been incarcerated for most of her life, and incarceration has been an impediment to the respondent being able to access programs and treatment necessary to achieve a sufficient degree of personal rehabilitation. More importantly, the respondent continues to suffer from bipolar disorder in addition to other mental health problems, including a prior diagnosis for oppositional defiant disorder. There is an established history of substance abuse and, although he has received treatment, he has no track record of maintaining sobriety outside a prison setting. The respondent and Leilah's mother were the subjects of numerous reports of domestic violence. Nevertheless, the evidence demonstrates that he has no real willingness to seek treatment or to take medication to control his bipolar disorder, despite such treatment being a requirement to reunify with his daughter. Similarly, he showed an unwillingness to address his domestic violence issues. As this court has previously indicated, "a respondent's failure to acknowledge the underlying personal issues that form the basis for the department's concerns indicates a failure to achieve a sufficient degree of personal rehabilitation." *In re Shane M.*, 148 Conn. App. 308, 322, 84 A.3d 1265 (2014), aff'd, 318 Conn. 569, 122 A.3d 1247 (2015).

In sum, we conclude on the basis of our review of the record that there was sufficient evidence to support the court's conclusion that there was clear and convincing evidence that the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable period of time, he could assume a responsible position in Leilah's life.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** Subsequent to oral argument, Chief Judge DiPentima replaced Justice Borden on the panel, and she has reviewed the record, briefs and the recording of the oral argument prior to participating in the decision of this appeal.

*** June 3, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] In the same proceeding, the court also terminated by consent the parental rights of Leilah's mother, Nicole W. Because she has not appealed from that judgment, we refer to Richard L. as the respondent throughout this opinion.

[2] The respondent also claims on appeal that the court improperly concluded that his parental rights should be terminated pursuant to § 17a-112 (j) (3) (D) because he did not have an ongoing parent-child relationship

with Leilah and permitting him further time to establish or reestablish such a relationship would be detrimental to the best interest of the child. Because we conclude that the court properly terminated the respondent's parental rights pursuant to § 17a-112 (j) (3) (B) (i), we do not address this additional claim of error. See *In re Brea B.*, 75 Conn. App. 466, 473, 816 A.2d 707 (2003) (because statutory grounds necessary to grant termination petition expressed in disjunctive, judgment granting petition may be affirmed on single ground).

[3] After it was determined that Kenneth A. was not Leilah's biological father, the petitioner filed a motion seeking to amend the neglect petition, to cite in additional parties, and to order additional paternity testing. As a result, the respondent and John Doe were cited in as putative fathers. After adjudicating Leilah neglected, the court provided the respondent with an advisement of rights and ordered a paternity test. On April 16, 2014, the court, *Trombley, J.*, adjudicated the respondent as Leilah's biological father. The respondent filed a motion for visitation, which was granted on June 4, 2014.

[4] Because he had not yet been identified as Leilah's biological father at the time of the neglect adjudication, no specific steps were ordered for the respondent at that time.

[5] Although we note that the proper inquiry is whether a parent will be able to assume a responsible position in the child's life, which does not necessarily correlate with whether he or she is a viable placement resource for the child, the court properly set forth the correct standard at the start of its analysis regarding the respondent's failure to rehabilitate and, read as a whole, there is no indication in the court's decision that it applied an incorrect standard. The respondent has not raised the court's "placement resource" language as a claim of error in this appeal.

[6] We note that the attorney for the minor child filed a statement pursuant to Practice Book § 79a-6 (c) indicating that she supports and adopts the brief submitted by the petitioner.

[7] The decision in *In re Yasiel R.* was published several weeks prior to the start of the respondent's termination trial. Even if an argument could be made against imposing a duty on a parent to recognize and to raise to the court any failure to comply with a pretrial canvass intended to benefit that parent, in the present case, once the procedural error was disclosed by the trial court, and an effort was made by the court to cure the defect, it was incumbent on the respondent to raise an objection before the trial court if it believed that the court's curative effort was insufficient and a new trial was necessary to protect adequately the respondent's rights.

[8] Our decision to review the respondent's unpreserved claim in this instance is sui generis and should not be construed as diminishing in any manner our oft stated admonition that we will not review claims of error that have not first been raised and decided by the trial court. See, e.g., *In re Coby C.*, 107 Conn. App. 395, 409, 945 A.2d 529 (2008).

[9] Pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified in *In re Yasiel R.*, supra, 317 Conn. 781, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 239–40; see also *In re Yasiel R.*, supra, 781 (modifying third prong by eliminating *Golding*'s use of "clearly" in describing requirements under that prong of test).

[10] We note that the trial court never specifically inquired whether the respondent understood his rights, which our Supreme Court indicated in *In re Yasiel R.* should be included as part of the mandated canvass. See *In re Yasiel R.*, supra, 317 Conn. 795. Nevertheless, the entirety of the content of the canvass substantially complied with the requirements set forth by our Supreme Court. In other instances in which a canvass is mandated to ensure important rights are protected, our courts have not adhered talismanically to any particular recitation in considering the overall adequacy of the canvass given. See, e.g., *State* v. *Claudio*, 123 Conn. App. 286, 292, 1 A.3d 1131 (2010) (" 'substantial compliance' " with plea canvass requirements set forth in Practice Book §§ 39-19 and 39-20 sufficient to ensure intended prophylactic safeguards met). In that context, we have explained that the test for substantial compliance is whether literal compliance would have

made a difference. *State* v. *Edwin A.*, 90 Conn. App. 380, 387, 876 A.2d 1272, cert. denied, 275 C onn. 930, 883 A.2d 1248 (2005). At no time has the respondent taken the position that he in fact failed to understand any of the rights explained by the court or that had he been asked if he understood he would have answered in the negative. Furthermore, that portion of the respondent's brief discussing the alleged insufficiency of the content of the court's canvass consists of no more than three sentences, with no citations to any law or legal authority. It is axiomatic that "[w]e are not required to review claims that are inadequately briefed." (Internal quotation marks omitted.) *In re Brianna L.*, 139 Conn. App. 239, 250, 55 A.3d 572 (2012).

[11] "The clear and convincing standard of proof is substantially greater than the usual civil standard of a preponderance of the evidence, but less than the highest legal standard of proof beyond a reasonable doubt. It is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Emphasis omitted; internal quotation marks omitted.) *In re Dylan C.*, 126 Conn. App. 71, 87, 10 A.3d 100 (2011).

───────────────────────