******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE RAYMOND B., JR.*
(AC 38927)

DiPentima, C. J., and Alvord and Gruendel, Js.

*Argued May 18—officially released July 1, 2016****

(Appeal from Superior Court, judicial district of Windham, Child Protection Session at Willimantic, Hon. Francis J. Foley III, judge trial referee.)

*Michael S. Taylor*, assigned counsel, with whom was *Matthew C. Eagan*, assigned counsel, for the appellant (respondent mother).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, *Gergory T. D'Auria*, solicitor general, and *Michael J. Besso* and *Daniel M. Salton*, assistant attorneys general, for the appellee (petitioner).

*Kelly L. Babbitt*, for the minor child.

*Opinion*

ALVORD, J. The respondent mother, Brandy B., appeals from the judgment of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families (commissioner). In accordance with General Statutes § 17a-112 (j) (3) (E),[1] the trial court terminated her parental rights with respect to her son, Raymond B., Jr.[2] On appeal, the respondent claims that the court improperly failed to conduct a pretrial canvass of her in accordance with our Supreme Court's decision in *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188, reconsideration denied, 319 Conn. 921, 126 A.3d 1086 (2015), and that the error is not subject to harmless error analysis. We affirm the judgment of the trial court.

The facts and procedural history of this case are not in dispute. On May 29, 2014, the commissioner sought temporary custody of the respondent's minor child, Raymond B., Jr. The court found that the respondent continued to allow the child to be around her longtime boyfriend, Raymond B., Sr.,[3] despite her admitted knowledge that Raymond, Sr., previously had been convicted of having sexual contact with a child as well as having committed an act of domestic violence Raymond, Sr., recently had been released on probation related to another sentence, imposed for attempting to strangle the respondent. Following that domestic violence incident, the respondent applied for a restraining order against Raymond, Sr., and alleged that he had subjected her to a "continuous threat of present physical pain or physical injury." Despite this domestic violence and warnings from the Department of Children and Families (department) that Raymond, Sr., should not be allowed to have any contact with the child, the respondent allowed the child to visit with Raymond, Sr., a minimum of eleven times from February, 2013, through May, 2014.[4] The trial court, *Dyer*, *J.*, granted the commissioner's petition for an order of temporary custody after finding that the child was in immediate physical danger from his surroundings.

On September 29, 2014, the commissioner filed a petition to terminate the parental rights of the respondent with respect to Raymond, Jr., her second child.[5] The trial court, *Dyer*, *J.*, adjudicated the child neglected after the respondent entered a plea of nolo contendre on May 15, 2015.[6] The court found that the commissioner had proven neglect on the grounds of injurious conditions. The respondent agreed to the commitment of Raymond, Jr., to the custody of the commissioner. The court declared a mistrial as to the termination of the respondent's parental rights. The court granted the respondent additional time to rehabilitate in order to reunify with Raymond, Jr.

In January, 2016, the commissioner proceeded with a petition to terminate the respondent's parental rights

with respect to Raymond, Jr. The respondent appeared and was represented by counsel. A trial was commenced on January 11, 2016. The respondent's counsel was an active and thorough participant in the trial. The respondent's counsel raised objections to the commissioner's direct examination of witnesses, objected to the admittance of certain evidence, cross-examined witnesses and also presented a witness to testify. The child also was represented by counsel, who requested that the court grant the commissioner's petition.

At the beginning of the second day of the trial, before the commissioner rested her case-in-chief, the court, *Hon. Francis J. Foley III*, judge trial referee, sua sponte, canvassed the respondent in order to satisfy our Supreme Court's newly created supervisory rule regarding the termination of parental rights that was established in *In re Yasiel R.*[7] As part of the canvass, the trial court first advised the respondent as to the significance of her parental rights being terminated. The respondent was informed that her rights included having legal representation, questioning and confronting the witnesses who testified, objecting to testimony and evidence, submitting evidence, presenting a defense, calling witnesses, and testifying or not testifying. The respondent acknowledged that she understood these rights.[8]

Following the canvass, the respondent did not object to the timing or the content of the court's canvass. Further, the respondent did not file a posttrial motion for a mistrial or a request to open the evidence. The respondent did not seek any other additional relief coincident with the trial.

In its memorandum of decision, the trial court found: "Based upon [the respondent's] continued involvement with dysfunctional, abusive men, her inability to maintain the necessary and appropriate parental skills that have been taught to her and her failure to fully address the mental health issues of her profoundly dysfunctional youth, the court concludes that [the respondent] cannot provide the safe, structured, consistent, constant, nurturing environment that a special needs child such as [Raymond, Jr.] requires. [The respondent] has not ever witnessed or experienced appropriate parenting herself. Her life has been totally tragic and dysfunctional. There is nothing in her present circumstances that suggests that she can even independently sustain herself, not to mention her fragile, needy child.

"The court finds by clear and convincing evidence that [the respondent] is the mother of the child, under the age of seven years, who is neglected or uncared for, and that she has failed or is unable to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time considering the age and needs of the child, such parent could assume a responsible position in the life of the child

and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the [commissioner]." This appeal followed.[9]

The respondent claims that the trial court erred by failing to conduct a pretrial canvass of her in accordance with our Supreme Court's decision in *In re Yasiel R.*, supra, 317 Conn. 773. The respondent further argues that a harmless error analysis is inapplicable to the present circumstances and therefore a new trial is warranted. The respondent did not raise this claim at trial and failed to preserve the issue for appeal. Nonetheless, the respondent asks us to review the claim under *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified in *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), or in the alternative, under the plain error doctrine. See Practice Book § 60-5. The respondent cannot prevail under *Golding*, and we disagree that the timing of the thorough canvass warrants reversal under the plain error doctrine.[10]

In *In re Yasiel R.*, supra, 317 Conn. 777, the respondent mother's parental rights were terminated after she agreed to forgo a trial and instead submitted her arguments to the trial court on the papers. The trial court in that case did not canvass the respondent as to her decisions to waive her right to a full trial and to not contest the commissioner's exhibits. Id. In response to these circumstances, our Supreme Court exercised its supervisory authority to establish a rule requiring a pretrial canvassing of all parents involved in termination trials. Id., 794. The court recognized that the respondent was not constitutionally entitled to a canvass. Id., 793. Our Supreme Court, however, stated that it was creating a rule that covered all parents involved in termination trials: "[W]e conclude that public confidence in the integrity of the judicial system would be enhanced by a rule requiring a brief canvass of all parents immediately before a parental rights termination trial so as to ensure that the parents understand the trial process, their rights during the trial and the potential consequences."[11] Id., 794.

I

The respondent first argues that her unpreserved claim is of a constitutional nature and should be reviewed pursuant to *Golding*. "[A] [respondent] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn.

239–40.

"In accordance with our case law and rules of practice, appellate review generally is limited to issues that were distinctly raised at trial. . . . Only in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial— after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omitted; internal quotation marks omitted.) *In re Leilah W.*, 166 Conn. App. 48, 59,     A.3d     (2016).

The respondent has failed to sustain her burden of proof as to the third prong of *Golding*. In *In re Yasiel R.*, supra, 317 Conn. 781–82, our Supreme Court addressed whether the due process clause of the fourteenth amendment to the United States constitution requires that a trial court canvass a parent about his or her rights in a parental termination proceeding. "[W]e conclude that due process does not require that a trial court canvass a respondent who is represented by counsel when the respondent does not testify or present witnesses and the respondent's attorney does not object to exhibits or cross-examine witnesses." Id., 787–88. In the present case, it should be noted that the respondent's counsel presented witness testimony, objected to exhibits, and cross-examined the commissioner's witnesses. Because the respondent cannot satisfy the third prong of *Golding*; see id., 788; we reject her constitutional claim.

## II

We next address the respondent's argument that the trial court's contravention of our Supreme Court's direction to conduct a canvass "at the very start of the termination trial"; id., 794; warrants reversal as plain error. We disagree.

"[T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will

result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Miller*, 150 Conn. App. 667, 678, 92 A.3d 986, cert. denied, 312 Conn. 926, 95 A.3d 522 (2014).

The respondent in this case was canvassed. Our Supreme Court's central purpose for the canvass rule was to ensure that "the respondent fully understands his or her rights." *In re Yasiel R.*, supra, 317 Conn. 795. The trial court accomplished this when it conducted the canvass midway through trial. The fact that a canvass occurred distinguishes this case from our opinion in *In re Daniel N.*, 163 Conn. App. 322,     A.3d     (2016), *petition for cert. filed* (Conn. March 1, 2016) (No. 150299).[12]

In *In re Leilah W.*, supra, 166 Conn. App. 65–66, this court recently concluded that canvassing a respondent at the conclusion of the termination of parental rights trial was harmless error. In doing so, this court addressed the contours of what constitutes compliance with the canvass rule: "Although this was not the procedure envisioned by our Supreme Court, and, accordingly should be avoided, if any concerns arose regarding the respondent's understanding of his trial rights, the trial court could have reopened the evidence to allow for additional proceedings if necessary." Id., 64. This court also stated that the burden is on the respondent to show the harm of a noncompliant canvass.[13] Id., 63.

Returning to the facts of this post-*In re Yasiel R.* juvenile appeal, the respondent was familiar with these proceedings, as she had twice before had her parental rights terminated, in the same courthouse, with respect to two other children. She also was on notice that her parental rights as to Raymond, Jr., were in jeopardy. After Raymond, Jr., was adjudicated neglected in May, 2015, and upon the request of the commissioner, the trial court declared a mistrial as to the termination of parental rights trial, thereby affording the respondent with additional time to attempt to rehabilitate herself as a parent. When the new termination trial commenced in January, 2016, the respondent was represented by counsel, who raised objections and presented the testimony of a witness. The facts of this case cannot in any way be marshaled as an affront to "public confidence in the process . . . ." *In re Yasiel R.* supra, 317 Conn. 794–95.

We are not convinced that the failure to conduct the canvass upon the commencement of the trial was so significant as to affect " 'the fairness and integrity of and public confidence in the judicial proceedings,' "; *State* v. *Miller*, supra, 150 Conn. App. 678; as required for reversal under the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open

for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** July 1, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes (Supp. 2016) § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that . . . (3) . . . (E) the parent of a child under the age of seven years who is neglected, abused or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families . . . ."

We note that § 17a-112 (j) (3) (E) was amended in 2015; see Public Acts 2015, No. 15-159, § 1; however, the amendment is not relevant to this appeal. For convenience, references herein are to the revision codified in the 2016 supplement to the General Statutes.

[2] In the same proceeding, the child's father, Justin P., appeared before the trial court with counsel, but during the pendency of the case he filed an affidavit consenting to the termination of his parental rights. The trial court canvassed Justin P. and found that he knowingly and voluntarily consented to the termination. Justin P. has not appealed from the trial court's judgment. Throughout this opinion, we refer to Brandy B. as the respondent.

[3] Raymond, B., Sr., is not related to Raymond, B., Jr. Throughout this opinion we refer to them as Raymond, Sr., and Raymond, Jr., respectively.

[4] As a result of the last of these several visits, Raymond, Sr., was arrested because his probation orders prohibited him from having contact with an unrelated child.

[5] The respondent's parental rights previously were terminated with respect to her first child, Makayla. During the May 15, 2015 termination trial, the respondent consented to the termination of her parental rights with respect to her third child, Nashton.

[6] The court canvassed the respondent after she entered her plea. The court thereafter stated: "The court canvass[ed] [the respondent] and finds that [the respondent's] plea of no contest was knowingly, voluntarily and [understood by the respondent] after the adequate advice and assistance from counsel with a full understanding of her rights. The court finds a factual basis for the plea. The plea is accepted and may be recorded."

[7] The court stated: "I think that in an abundance of caution, I am going to give [the respondent mother] the *In re Yasiel R.* advisement. I don't think she needs it. She's exercising all of her legal rights—usually that relates to people who don't exercise their legal rights—and the other reason is that she's been through this process twice in the past, so she knows what I'm going to tell her. But I'm going to advise you in any event."

[8] The court canvassed the respondent as follows: "In a termination of parental rights hearing, you should understand that in the event the court terminates your parental rights, this will result in the end of your legal relationship with the child. You'll have no legal rights, no authority, no responsibility, and you will no longer have the right to make any decisions of any kind affecting the minor child. You will not be entitled to any state or federal benefits or entitlements, and the child, if the court grants the termination of parental rights, will be eligible to be adopted.

"At this hearing, you have the right to be represented by a lawyer, and you do have a lawyer. Attorney [Alyssa S.] Pershan is a licensed lawyer in the state of Connecticut who is qualified to represent people before this court.

"She—you have the right to question and confront any of the witnesses against you that may be brought in by the Department of Children and Families, and to have your lawyer test their memory to determine if they are being truthful. You have the right to object to any testimony. You have the right to an admission of any documents—you have the right to object to the admission of any documents, including social studies or psychological reports, and your lawyer has been exercising that right right along.

"You have the right to make any objections in accordance with the rules of evidence. You have the right to present your defense, if any, to this case. You may call your own witnesses to assist you. You may testify if you want to testify, but you don't have to testify because you have the right to remain silent. But you do have the right to tell your side of the story if you wish.

If you do not testify, the court could draw an adverse inference against you. I can tell you that I will not do that.

"And, finally, you are advised that if you do not present any witnesses on your own behalf and do not object to any testimony, the court will decide the matter based upon the evidence that has been properly presented.

"Do you think you understand those rights?"

The respondent answered yes.

[9] At the close of oral argument before this court, Chief Judge DiPentima thanked the parties for agreeing to expedite the case so that it could be heard before the court adjourned for the 2015–2016 term. This effort was in keeping with our Supreme Court's emphasis on expedient resolution of juvenile matters: "It is universally recognized that delay in determining whether to terminate parental rights can cause serious and potentially irreparable harm in the lives of the young children who are involved in the termination proceedings. The legislature also has recognized the potential for such harm in General Statutes § 46b-142 (d), which provides: Notwithstanding subsections (a), (b) and (c) of this section, the Department of Children and Families, or any party to the action aggrieved by a final judgment in a termination of parental rights proceeding, shall be entitled to *an expedited hearing* before the Appellate Court. A final decision of the Appellate Court *shall be issued as soon as practicable* after the date on which the certified copy of the record of the case is filed with the clerk of the Appellate Court." (Emphasis in original; internal quotation marks omitted.) *In re Yasiel R.*, 319 Conn. 921, 922, 126 A.3d 1086 (2015) (denying motion for reconsideration) (*Zarella, J.*, dissenting).

[10] The respondent has not claimed any error as to the content of the canvass.

[11] We note that the question of whether the supervisory rule announced in *In re Yasiel R.* should be continued to be applied retroactively is before our Supreme Court in *In re Egypt E.*, SC 19643 and SC 19644. Additionally, the commissioner's petition for certification to appeal from this court's decision in *In re Daniel N.*, 163 Conn. App. 322,     A.3d     (2016) (retroactively applying *In re Yasiel R.* supervisory rule), is pending before our Supreme Court.

[12] The respondent has interpreted our decision in *In re Daniel N.*, supra, 163 Conn. App. 322, as holding that a harmless error analysis is inapplicable if a trial court has deviated in any degree from the canvass rule announced in *In re Yasiel R.* This is an unreasonable reading of that opinion considering that this court did not address harmless error in deciding *In re Daniel N.* In the present case, the harmlessness of the court's error complements the plain error analysis of this decision.

The Supreme Court's supervisory rule in *In re Yasiel R.* regarding the pretrial canvassing of parents in termination trials was announced after the termination trial in *In re Daniel N.* had been conducted. This court concluded that the rule that was adopted by our Supreme Court in *In re Yasiel R.* was retroactive to termination trials that were conducted prior to its announcement. *In re Daniel N.*, supra, 163 Conn. App. 335–36. In his opinion concurring in part and dissenting in part in *In re Yasiel R.*, Justice Zarella stated: "I disagree with the majority's retroactive application of [the] canvass requirement in the present case and its use of its supervisory authority to reverse the judgments of the trial court on the ground that the trial court had failed to conduct such a canvass, which was not required at the time of the termination proceedings." *In re Yasiel R.*, supra, 317 Conn. 807.

This court in *In re Daniel N.* was compelled to order a new termination trial because the respondent had not been canvassed in accordance with the recently created supervisory rule. The absence of the canvass in that case eliminated the precise safeguard that our Supreme Court put in place for all termination of parental rights trials, irrespective of any considered analysis of whether the parent understood the nature of the proceedings, his or her rights, and the consequences of termination. See *In re Yasiel R.*, supra, 317 Conn. 788–89, 796.

[13] As this court noted in *In re Leilah W.*, supra, 166 Conn. App. 58 n.7: "Even if an argument could be made against imposing a duty on a parent to recognize and to raise to the court any failure to comply with a pretrial canvass intended to benefit that parent, in the present case, once the procedural error was disclosed by the trial court, and an effort was made by the court to cure the defect, it was incumbent on the respondent to raise an objection before the trial court if he believed that the court's curative effort was insufficient and a new trial was necessary to protect adequately the respondent's rights."